# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

_____

No. 97-20793
Summary Calendar

_____

SUNKYONG ENGINEERING & CONSTRUCTION COMPANY, LTD.;
SKEC AMERICAN, INC.

Plaintiffs-Appellees,

VERSUS

BORN, INC.

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-97-CV-1638)

_____

June 16, 1998

Before REYNALDO G. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

The district court granted Sunkyong Engineering & Construction Company, Ltd.'s

("Sunkyong") and SKEC American, Inc.'s ("SKEC") (collectively, the "Appellees") Petition to

Compel Arbitration. The Appellees filed the petition to compel arbitration of their dispute with

Born, Inc. ("Born"), with whom the Appellees had contracted to purchase industrial heaters for

use in the Appellees' construction of an aromatics plant in Thailand. We find below that the

district court properly held the dispute to be subject to arbitration under the terms of the contract

_____

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published
and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

and, therefore, we affirm the district court's order to compel arbitration.

## *Background*

Born is a Delaware corporation that manufactures industrial heaters and furnaces for sale throughout the world. Sunkyong is a Korean engineering and construction firm that was the general contractor for the construction of an aromatics plant in Thailand. SKEC, a wholly-owned subsidiary of Sunkyong, is a Delaware corporation with its headquarters in Houston, Texas.

In September, 1994 Born and Sunkyong entered into a contract under which Born agreed to construct and deliver sixteen direct fired heaters, made to custom specifications, for use in Sunkyong's construction project in Thailand. The contract provides that it is governed by Korean law, and that any disputes arising out of or relating to the contract, which the parties are unable to settle, are subject to arbitration in Seoul, Korea, under the rules and regulations of the Korean Commercial Arbitration Board ("KCAB"). Sunkyong subsequently assigned the contract to its subsidiary, SKEC, for the purpose of obtaining financing from a U.S. bank, and for administrative convenience. Born agreed to the assignment.

In September 1995, while the Thailand project was under way and Born was manufacturing the heaters, Born demanded payment of an additional $2,266,000. Born attributes this increase in contract price to the Appellees' design changes and failure to fulfill Appellees' contractual obligations. The Appellees protested, informing Born that they felt the price increase was completely unwarranted. The parties attempted to negotiate a resolution of the dispute over the additional payment, and the Appellees ultimately agreed to the $2,266,000 price increase. The Appellees maintain that they made this payment under duress, because the increase was completely unwarranted, reflected work that Born was already contractually obligated to perform,

2

and because Born allegedly refused to continue the work, knowing that the stage of completion of the Thailand project would not allow the Appellees to find a replacement source for the heaters or to await the outcome of arbitration in the interim. At any rate, after the Appellees made the payment, Born completed the work, and the Thailand project owner ultimately accepted the project on January 31, 1997.

Upon completion of the Thailand project, the Appellees filed an arbitration action in Seoul, Korea, pursuant to the contract's arbitration clause. On May 7, 1997, the KCAB sent notice of the arbitration to Born. On May 8, 1997, the Appellees filed a Petition to Compel Arbitration in the Untied States District Court for the Southern District of Texas, and served Born's Texas registered agent for service of process. In response, on June 2, 1997, Born filed a Motion to Dismiss for Lack of Personal Jurisdiction, Subject Matter Jurisdiction, Improper Venue, and in the Alternative, Motion to Transfer Venue.

On July 8, 1997, the district court entered an order setting a hearing in the case for September 2, 1997 to determine pending motions. The Appellees filed their response to Born's motion to dismiss on July 14, 1997, after conducting several depositions and obtaining volumes of Born's business records. That same day, Born filed a request for expedited consideration of its motion to dismiss. On July 15, 1997, the district court entered an order moving the hearing date up to July 24, 1997. Born filed its reply to the Appellees' response on July 22, 1997, without obtaining any discovery.

At the July 24 hearing, the district court concluded that Born's arguments on personal jurisdiction lacked merit, and therefore, decided to consider the merits of the Petition to Compel Arbitration. The court decided to enforce the arbitration agreement, despite the defenses Born

3

raised in its motion and at the hearing. The court then entered an order holding that it had personal jurisdiction over Born and requiring Born to arbitrate the dispute in Seoul, Korea, pursuant to the arbitration clause in Born's contract with the Appellees.

Born filed a motion for reconsideration on August 7, 1997, arguing that the district court had deprived Born of a property interest without due process of law and that Born was entitled to conduct discovery on the merits of the petition to compel arbitration. On September 9, 1997, the district court entered an order denying Born's motion for reconsideration, concluding that Born failed to indicate what discovery it needed to conduct and how that discovery would change the meaning of the arbitration clause.

On September 30, 1997, the district court entered an order stating, "This case is closed in favor of arbitration." Born's chief executive and Born's attorney attended the first arbitration hearing in Seoul, Korea on September 30, 1997. There was a second arbitration hearing on December 9, 1997 and, as of the time of briefing to this Court, a third hearing was scheduled for February 3, 1998. Born's appeal of the district court's order to compel arbitration rests on Born's arguments that the district court lacked personal and subject matter jurisdiction, and deprived Born of a property interest without due process of law.

### *Discussion*

1.      *This Court has Jurisdiction to Review the District Court's Order.*

Initially, we note that this Court does have jurisdiction to hear this appeal. While the Federal Arbitration Act ("FAA") prohibits appeals from interlocutory orders compelling arbitrations, it does permit appeals from final orders compelling arbitration. *F.C. Schaffer & Assocs. v. Demech Contractors, Ltd.*, 101 F.3d 40, 41 (5th Cir. 1996) (discussing 9 U.S.C. § 16).

4

An order compelling arbitration is final if the court issues it in the context of an independent arbitration action, *i.e.*, if the only issue before the court is the dispute's arbitrability. *F.C. Schaffer*, 101 F.3d at 41. This stands in contrast to an order compelling arbitration in an embedded arbitration action, *i.e.*, where the case includes other claims for relief so that an arbitrability ruling does not end the litigation on the merits and, therefore, is interlocutory in nature. *Id.*; *see also McDermott Int'l v. Underwriters at Lloyds Subscribing to Memo. of Ins. No. 104207*, 981 F.2d 744, 747 (5th Cir.), *cert. denied*, 508 U.S. 951 (1993).

In this case, it is clear that the district court's order to compel arbitration is a final order; therefore, the FAA does not prohibit this Court from entertaining Born's appeal. All of the issues before the district court were directly related to the arbitrability of the dispute: the binding effect of the arbitration clause, Born's defenses to the binding effect of the arbitration clause, and Born's arguments about the district court's jurisdiction to rule on the arbitrability of the dispute. This is clearly different from the situation in *F.C. Schaffer*, where the plaintiff filed an action under the Declaratory Judgment Act and the FAA, seeking both an injunction prohibiting the defendant from proceeding with arbitration *and* a declaration regarding the merits of the underlying dispute. 101 F.3d at 41. Similarly, in *McDermott*, besides the arbitrability issue, the case involved various other claims, which the district court stayed pending arbitration. 981 F.2d at 746. In contrast, the only issue before the district court in this case was the arbitrability of the dispute, and the court ordered the case closed, as opposed to stayed pending arbitration. As such, the district court's order is a final order, which the FAA does not prohibit this Court from reviewing.

2.      *The District Court had Personal Jurisdiction*.

5

Next, we find the argument that the district court lacked personal jurisdiction over Born to be without merit. A court's power to exercise personal jurisdiction over a non-resident defendant depends upon the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 212 (1977). Due process of law requires that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The district court is required to use the law the state in which it sits to decide issues of personal jurisdiction. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1382 (5th Cir. 1987). The Texas Long-Arm Statute extends to the limits of due process, *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir. 1988) (discussing TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-045 (Vernon 1986)); therefore, the main issue here is whether the district court's assertion of jurisdiction over Born is constitutionally permissible. A defendant may be subject to the general jurisdiction of Texas courts if the defendant's contacts with Texas are "continuous and systematic," even if the cause of action is unrelated to any particular contact. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir 1987). With regard to specific jurisdiction, which extends to causes of action arising out of a defendant's purposeful contacts within the forum state, due process requires that, in addition to the foreseeability of causing injury in another state, "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v Rudzewicz*, 471 U.S. 462, 474

(1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

In this case, the district court did not err in finding that "[t]here is specific dispute related jurisdiction." Born expressly consented to Sunkyong's assignment of the contract to SKEC, a corporation headquartered in Texas. By establishing and maintaining a contractual relationship with a corporation headquartered in Texas, which would, therefore, be performing its contractual obligations in Texas, Born was doing business in the state of Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. §17.042 (West 1988) ("[A] nonresident does business in this state if the nonresident . . . contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state . . . ."). The current dispute arose out of Born's business activity in Texas, which supports specific jurisdiction.

Furthermore, Born's overall contacts with Texas are significantly more than minimal or fortuitous, so that the court's exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice.[1] To begin with, Born is registered to do business in Texas and has a registered agent for service of process in Texas. Born has a contract with a sales representative in Houston, Texas, who testified that Born "definitely" had been doing business in Texas. Born's only other sales representatives are in California and New York. Even though Born asserts that their representative in Texas is an independent contractor, the representative's work is finished once it puts the customer in contact with Born, who then negotiates with the customers via correspondence and in technical meetings and formal contract negotiations, which

---

[1] The district court found specific jurisdiction without passing on the question of general jurisdiction; therefore, in light of our decision that the district court did not err in finding specific jurisdiction, we similarly decline to pass on the question of general jurisdiction. We do note, however, that Born's significant activities within Texas, discussed above, would be directly relevant to the analysis of general jurisdiction were we to address that question.

7

have frequently taken place in Texas.

In addition, the record indicates that Born has been involved in $9.7 million worth of contracts with some connection to Texas. Born concedes that $4.8 million worth of these contracts could be considered to be Texas contracts. Born's annual revenues for 1995-97 ranged from approximately $16 million in 1995, to approximately $8 million in 1997. At least some of Born's Texas contracts specifically provided for application of Texas law to the contract. Since 1993, Born has shipped goods from the Port of Houston for projects under contracts totaling approximately $1.14 million. Born employees have made numerous business trips to Texas and placed between 200 and 400 phone calls per month to Texas from Born's office in Oklahoma. Born has purchased more than $1.3 million in equipment and supplies from numerous Texas vendors. Born also has hired engineers, inspectors, and consultants in Texas. Born has sold approximately $1.2 million in spare parts and equipment to numerous Texas customers since 1993. Born purchases automobile insurance for one of its shareholder/employees from a Texas insurance company and owns real property in Texas, on which Born has paid taxes. Born Chairman Harold J. Born maintained a professional engineer's license in Texas at least until the end of 1995, for which Born paid the licensing fees. Born also regularly conducts business with a company in Houston that acquires all visas and passports Born's employees need for international travel. All of these factors, taken together, support specific jurisdiction by illustrating that Born's conduct and connections with Texas were such that Born should have "reasonably anticipate[d] being haled into court there." *Burger King Corp.*, 471 U.S. at 474.


**3.      *The District Court had Subject Matter Jurisdiction*.**

8

Chapter 2 of the FAA adopts and implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). 3 U.S.T. 2517, T.I.A.S. No. 6957, 330 U.N.T.S. 38 [1970], republished as a note following 9 U.S.C. § 201 (1998 Supp.). Both the United States and Korea are signatories to the Convention. *Id.* The FAA grants the United States district courts original federal question jurisdiction over arbitral awards and agreements to arbitrate that fall within the Convention. 9 U.S.C. § 203. As this Court has noted, the Convention contemplates a very limited inquiry by courts when considering a motion to compel arbitration:

> 1) is there an agreement in writing to arbitrate the dispute; in other words, is the arbitration agreement broad or narrow;
> 2) does the agreement provide for arbitration in the territory of a Convention signatory;
> 3) does the agreement to arbitrate arise out of a commercial legal relationship;
> 4) is a party to the agreement not an American citizen?

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil,* 767 F.2d 1140, 1144-45 (5th Cir. 1985). "If these requirements are met, the Convention requires district courts to order arbitration." *Id.* at 1145. The FAA reflects a "congressional declaration of a liberal policy favoring arbitration." *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). This Court has recognized that there is a strong presumption in favor of arbitration. *See, e.g., Phillips Petroleum Co. v. Marathon Oil Co.*, 794 F.2d 1080, 1081 (5th Cir. 1986). As such, "where a contract contains an arbitration clause, there exists a strong presumption that arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.*

The question of the arbitrability of the dispute in this case falls squarely within the subject matter jurisdiction that the FAA grants to federal courts concerning arbitration agreements under

9

the Convention. The Appellees' petition is grounded on a written arbitration agreement providing for arbitration in Korea, a signatory state to the Convention. The relationship between the parties is clearly commercial in nature, and involves a party that is not an American citizen, namely, Sunkyong. *See Riley v. Kingsley Underwriting Agencies. Ltd.*, 969 F.2d 953, 959 (10th Cir.), *cert. denied* 506 U.S. 1021 (1992) (stating that fourth question under Convention, regarding whether one party is not an American citizen, is also satisfied if the commercial relationship has some reasonable relation with one or more foreign states); *see also* 9 U.S.C. § 202 ("An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."). These facts, consistent with the congressional and judicial policies favoring arbitration, satisfy the "limited inquiry" that the Convention directs courts to engage in when ruling on a motion to compel arbitration. *See Sedco*, 767 F.2d at 1144-45.

Furthermore, Born's allegations of fraud and waiver do not defeat the binding effect of the arbitration agreement. As this Court has noted, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.'" *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)). Although a party seeking arbitration may waive its right to arbitration by substantially invoking the judicial process to the detriment or prejudice of the other party, proof of such waiver is a heavy burden which we

10

do not find satisfied here. *See id.* (discussing waiver of right to arbitration).

The Convention recognizes that a court need not enforce an agreement to arbitrate that is null and void; however, U.S. courts have narrowly construed this "null and void" exception. *See Riley*, 969 F.2d at 960; *Rhone Mediterranee Compagnia v. Lauro*, 712 F.2d 50, 53 (3d Cir. 1983). While an agreement to arbitrate may be null and void when it is "subject to an internationally recognized defense such as duress, mistake, fraud, or waiver," *id.*, we resolve doubts or questions of fact regarding those defenses in favor of arbitration. *See Price*, 791 F.2d at 1158. Such questions of fact exist here; therefore, in keeping with the legislative and judicial presumptions in favor of arbitrability, we find that Born's allegations of fraud and waiver in this case would be more appropriately presented at arbitration, where the arbitrator can reach the merits of the claims and defenses raised. *See City of Meridian, Mississippi v. Algernon Blair, Inc.*, 721 F.2d 525, 528-29 (5th Cir. 1983) ("Our sole function is to determine whether arbitration should be commenced; we play no part in determining the strength of claims and defenses presented.").

### 4. *The District Court Provided Born with all Process Due Under the Law*.

Finally, we reject Born's argument that the district court denied Born due process of law by ordering arbitration in this case. Born argues that it did not have a meaningful opportunity to be heard and respond to the Appellees' petition, which affected Born's asserted property interest in defending itself; however, Born did raise its defenses to the petition in its motion to dismiss, and the district court considered and ruled on those defenses at the hearing. As such, Born cannot successfully argue that it did not have a meaningful opportunity to be heard.

The district court's hearing and decision were adequate for purposes of Born's due

11

process rights. The FAA requires that courts treat proceedings under the Convention as motions. 9 U.S.C. § 6. As noted, courts engage in a very limited inquiry regarding the enforceability of arbitration clauses subject to the Convention. The Supreme Court has ruled that motions to compel arbitration "call for an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983). In addition, once the court finds an enforceable agreement to arbitrate, defensive matters such as those Born has raised are matters for decision by the arbitrators, making further discovery in the district court irrelevant. *See Moses H. Cone Memorial Hosp.*, 460 U.S. at 24 (holding that doubts concerning the scope of arbitrable issues, such as defenses to arbitrability, should be resolved in favor of arbitration).

Born's argument that the district court, by compelling arbitration, essentially granted summary judgment in favor of the Appellees without notice to Born is without merit. Born raised its defenses in its motion to dismiss and the district court considered those defenses. As such, Born's argument that it did not have adequate notice of the court's intention to rule on both the petition to compel arbitration and the motion to dismiss is irrelevant. This is particularly true in light of our finding that Born's defenses raise arbitrable issues that the court was justified in sending to arbitration.

Finally, the district court did not violate Born's due process rights by ordering arbitration without a jury trial. The party resisting arbitration bears "the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act." *Bhatia v. Johnston*, 818 F.2d 418, 422 (5th Cir.1987). As this Court has noted, "[u]nder Supreme Court precedent, a party must challenge the ''making' of the agreement to arbitrate' itself in order to create a jury-triable issue." *Dillard*

12

*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 n.9 (5th Cir. 1992) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)), *cert. denied*, 506 U.S. 1079 (1993). Born has not challenged the making of the agreement to arbitrate but, rather, has advanced defenses more appropriate for resolution by arbitration. Furthermore, Born has not argued that it ever requested a jury trial, and Born's motion for reconsideration does not argue that the district court violated Born's due process rights by not holding a jury trial. As such, the district court's hearing and decision were adequate for purposes of Born's due process rights.

## *Conclusion*

The district court did not err in ordering Born to submit to arbitration. The court properly rejected Born's challenges to the court's jurisdiction and did not deprive Born of due process of law. Accordingly, we AFFIRM the district court's order to compel arbitration.

AFFIRMED.